FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 14, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ARTURO C.,[1] <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security, <br><br> Defendant. | No.   4:26-cv-5015-EFS <br><br> **ORDER AFFIRMING THE ALJ'S DENIAL OF BENEFITS** |

The Administrative Law Judge (ALJ) issued a partially favorable decision as to Plaintiff Arturo C.'s Title 2 application for benefits, finding him disabled from March 27, 2020, through April 30, 2022. Plaintiff contends substantial evidence does not support the ALJ's

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

decision that he was not disabled after April 30, 2022, due to a contradictory medical opinion and several errors at step five in the sequential evaluation process. For the reasons explained herein, the ALJ's decision is affirmed.

## I.    Background

Plaintiff filed his Title 2 application for benefits in June 2022, alleging disability beginning March 27, 2020, due to a back injury, thyroid problems, high blood pressure, leg spasms, foot pain, problems with standing and walking, and inability to sit because of pain.[2] After his application was denied initially and on reconsideration, Plaintiff appeared for a hearing before ALJ Marie Palachuk in October 2024, at which Plaintiff, a medical expert, and a vocational expert testified.[3]

The ALJ issued a partially favorable decision finding Plaintiff disabled from March 27, 2020, through April 30, 2022, and not disabled

---

[2] Administrative Record (AR) 335–38, 368.

[3] AR 105–29.

DISPOSITIVE ORDER - 2

after April 30, 2022.[4] The ALJ found Plaintiff's degenerative disc disease and herniated disc were disabling until his conditions materially improved after April 30, 2022.[5] For the period after the closed period of disability, the ALJ found Plaintiff's alleged symptoms were "not entirely consistent" with the medical evidence and other evidence.[6] As to the medical opinions, the ALJ found:

- the treating opinion of Keith Goodman, DO, unpersuasive.

- the examining opinion of Marquetta Washington, ARNP, persuasive.

- the testifying opinion of Mark Stevens, MD, persuasive.

---

[4] AR 40–60. Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[5] AR 50–53.

[6] AR 54. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499 n.2 (9th Cir. 2022).

DISPOSITIVE ORDER - 3

- the prior administrative medical findings by the state agency medical consultants unpersuasive for the period after April 30, 2022.[7]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2025.

- Step one: Plaintiff had not engaged in substantial gainful activity since March 27, 2020, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: herniated disc at L5-S1 status post microdiscectomy and two-stage fusion at L4-S1; Graves' disease; and degenerative disc disease of the cervical spine.

- Step three: Plaintiff had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments from March 27, 2020, through April 30, 2022, but did not thereafter.

- RFC: after April 30, 2022, Plaintiff had the RFC to:

---

[7] AR 57–58.

DISPOSITIVE ORDER - 4

perform light work as defined in 20 CFR 404.1567(b) except he could stand and/or walk up to four hours total in an eight-hour day and would need to alternate between sitting and standing at will; he could frequently push and pull bilaterally; he could occasionally balance, stoop, kneel, and climb ramps or stairs but could never crouch, crawl, or climb ladders, ropes, or scaffolds; he would need to wear glasses to read small print; and he should avoid all exposure to extreme cold, vibration, and hazards (e.g., unprotected heights, dangerous moving machinery)

- Step four: Plaintiff was not capable of performing past relevant work.

- Step five: after April 30, 2022, considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as small-products assembler, routing clerk, and production assembler.[8]

---

[8] AR 50–60.

DISPOSITIVE ORDER - 5

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied review.[9] Plaintiff now appeals to district court.[10]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[11] and such error impacted the nondisability determination.[12] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such

---

[9] AR 1–3.

[10] ECF No. 1.

[11] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[12] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

DISPOSITIVE ORDER - 6

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13]

### III.    Analysis

**A.    Substantial Evidence of Improvement After April 30, 2022: Plaintiff fails to establish error.**

Plaintiff disagrees with the ALJ's determination that his conditions improved such that he was no longer disabled after April 30, 2022. Plaintiff notes that his primary care provider, Dr. Goodman, opined in November 2023 that Plaintiff's back issues and pain would limit him to lifting ten pounds and standing or walking up to two

---

[13] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

DISPOSITIVE ORDER - 7

hours. The Commissioner responds that Plaintiff waived any challenge to the ALJ's consideration of Dr. Goodman's opinion because Plaintiff did not argue that the ALJ erred in considering it.

Plaintiff—not the Court—must flesh out and support his arguments with law and facts.[14] In general, a claimant forfeits an argument by not challenging the ALJ's decision in that regard in briefing.[15]

Here, Plaintiff did not forfeit his argument. True, Plaintiff did not plainly articulate any specific challenge to the ALJ's weighing of Dr. Goodman's opinion; Plaintiff simply argued that his conditions did

_____

[14] *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) ("We require contentions to be accompanied by reasons."); *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

[15] *See Nadon v. Bisignano*, 145 F.4th 1133, 1138 (9th Cir. 2025).

DISPOSITIVE ORDER - 8

not materially improve after April 30, 2022, and then summarized Dr. Goodman's opinion.[16] But Plaintiff's summary of Dr. Goodman's opinion includes his lifting/carrying and standing/walking restrictions, both of which contradict the ALJ's crafted RFC.[17] Therefore, Plaintiff sufficiently argued that substantial evidence does not support the lifting/carrying and standing/walking restrictions in the ALJ's crafted RFC based on Dr. Goodman's contradictory opinion. The Commissioner was not prejudiced by the inartful presentation of this argument in Plaintiff's brief, as the Commissioner responsively argued that substantial evidence supports the ALJ's RFC finding.[18]

In any event, substantial evidence supports the exertional components of the RFC and the ALJ's consideration of Dr. Goodman's opinion. Dr. Goodman completed a medical questionnaire in November 2023 indicating his opinion that Plaintiff's lumbar radiculopathy, surgeries in 2020 and 2021, spinal stenosis, and chronic pain would

---

[16] ECF No. 10 at 13.

[17] *See id.*; AR 54, 1171.

[18] *See* ECF No. 12 at 4–5.

DISPOSITIVE ORDER - 9

limit him to lifting/carrying ten pounds daily and standing/walking two hours daily.[19] The ALJ reasonably considered this opinion unpersuasive for lack of supportability and consistency.[20] The ALJ correctly noted that Dr. Goodman did not support his opinion with any explanation or treatment records,[21] and Dr. Goodman's treatment records themselves, which the ALJ considered elsewhere in her decision,[22] do not support Dr. Goodman's opinion.[23] The ALJ also reasonably determined that Dr. Goodman's opinion was inconsistent with the objective medical evidence from around the time of the opinion and the other medical opinions of record, as an August 2023 MRI

---

[19] AR 1171.

[20] *See* AR 57; 20 C.F.R. § 404.1520c(a)–(c).

[21] AR 57, 1171.

[22] AR 54–56.

[23] *See, e.g.*, AR 803–10, 848–51, 1199–201; *cf. Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017) (recognizing that the ALJ is to consider whether treatment notes are consistent with a checkbox opinion).

DISPOSITIVE ORDER - 10

showed no new disc herniation, two mild disc bulges, and mild stenosis; Plaintiff's neurosurgeon did not recommend any treatment except for physical therapy; and NP Washington, who evaluated Plaintiff in December 2023, and Dr. Stevens, an orthopedic specialist who reviewed the entire medical record, opined that Plaintiff could lift/carry up to twenty pounds and stand/walk for at least four hours if alternating between sitting and standing/walking.[24] Accordingly, substantial evidence supports the ALJ's consideration of Dr. Goodman's opinion and the light-work RFC[25] with a four-hour standing/walking limitation.

**B.    Step Five: Plaintiff fails to establish error.**

At step five, considering Plaintiff's RFC, age, marginal education level, and work history, the ALJ found Plaintiff could perform any of the 10,000 small-parts assembler jobs existing nationwide, 10,000

---

[24] AR 57, 110–14, 870, 876–78, 1146–49, 1157–58, 1173–79.

[25] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

DISPOSITIVE ORDER - 11

production assembler jobs, and 25,000 routing clerk jobs. Plaintiff raises three challenges to the step-five findings: (1) substantial evidence does not support finding he had a marginal education; (2) the ALJ did not identify a "significant" number of jobs he could perform; and (3) substantial evidence does not support finding he has the language skills necessary to perform the step-five jobs. Each challenge fails.

### 1.    "Marginal" education level

Plaintiff argues that substantial evidence does not support the ALJ's finding that he has a marginal education because he attended school only through ninth grade in Mexico.[26] Instead, Plaintiff argues, he should be considered illiterate relative to the English language. The

---

[26] Without citation to the record, Plaintiff states in his opening brief that he attended school through seventh grade in Mexico, ECF No. 10 at 10, but he testified at the hearing that he attended through ninth grade, AR 121, which no evidence contradicts. The Court's reasoning is the same whether Plaintiff has a seventh-grade or ninth-grade education in Mexico.

Commissioner responds that Plaintiff's ninth-grade education in Mexico meets the regulatory definition of "marginal education."

When determining whether the claimant can perform other jobs, the ALJ must consider the claimant's education level.[27] "Education is primarily used to mean formal schooling or other training which contributes to [the claimant's] ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability."[28] The regulations establish categories of education levels.[29] As relevant here, the "illiteracy" category "means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling."[30] The Administration considers the illiteracy category appropriate "only if the individual is unable to read

---

[27] 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1564.

[28] 20 C.F.R. § 404.1564(a).

[29] 20 C.F.R. § 404.1564(b).

[30] 20 C.F.R. § 404.1564(b)(1).

DISPOSITIVE ORDER - 13

or write a simple message in any language."[31] The "marginal education" category "means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education."[32] The Administration considers education level "a reliable indicator of the individual's ability to read and write a simple message . . . regardless of whether the schooling occurred in the United States or in another country."[33]

Prior to April 27, 2020, the regulations provided that "education also includes how well you are able to communicate in English since this ability is often acquired or improved by education," so the ALJ "consider[ed] a person's ability to communicate in English when [the

---

[31] Social Security Ruling, SSR 20-01p: How We Determine an Individual's Education Category, 85 FR 13692-02 (Mar. 9, 2020).

[32] 20 C.F.R. § 404.1564(b)(2).

[33] SSR 20-01p, *supra* n.31.

DISPOSITIVE ORDER - 14

ALJ] evaluate[d] what work, if any, [the claimant could] do."[34] Effective April 27, 2020, the regulations no longer require the ALJ to do so.[35]

Here, the ALJ did not err in finding that Plaintiff had a marginal education because he attended school until the ninth grade in Mexico, which is slightly more schooling than the Commissioner generally considers a marginal education.[36] Plaintiff has cited no law or regulation that invalidates the Administration's policy of considering education outside the United States.[37] Further, because ALJs no longer consider a claimant's English-language communication abilities when

---

[34] 20 C.F.R. § 404.1564(b), (b)(5) (2020) (effective until April 27, 2020).

[35] 20 C.F.R. § 404.1564 (amendments effective April 27, 2020); Removing Inability To Communicate in English as an Education Category, 85 FR 10586-01 (Feb. 25, 2020).

[36] AR 121; 20 C.F.R. § 404.1564(b)(2).

[37] *See* SSR 20-01p, *supra* n.31.

DISPOSITIVE ORDER - 15

determining education level, the "illiteracy" education category would not be supported based on Plaintiff's ninth-grade education.[38]

### 2.    "Significant" number of jobs existing nationwide

Next, Plaintiff argues the ALJ did not identify a "significant" number of jobs existing nationwide because 10,000, the number of existing small-parts assembler jobs and the number of existing production assembler jobs, is not "significant" as a matter of law.

The Commissioner responds that the ALJ found 45,000 total jobs nationwide that Plaintiff could perform: 10,000 small-parts assembler jobs, 10,000 production assembler jobs, and 25,000 routing clerk jobs. The Commissioner contends that 45,000 is a "significant" number as a matter of law. The Commissioner asserts that no law supports Plaintiff's argument that each individual job must exist in significant numbers, but even accepting the argument, the ALJ still found 25,000 routing clerk jobs, which is by itself a significant number.

---

[38] *See* 20 C.F.R. § 404.1564(b)(1); 85 FR 10586-01; SSR 20-01p, *supra* n.31.

DISPOSITIVE ORDER - 16

At step five, the Commissioner must establish that the claimant can perform work in the national economy which exists in "significant numbers in the national economy (either in the region where [the claimant] live[s] or in several regions in the country)."[39] The Ninth Circuit has "never set out a bright-line rule for what constitutes a 'significant number' of jobs."[40] Even so, the Ninth Circuit has held that "the ALJ's finding that 25,000 national jobs is sufficient presents a close call," but nevertheless "represents a significant number of jobs in several regions of the country."[41]

Here, the ALJ identified approximately 45,000 total jobs existing nationwide that Plaintiff could perform.[42] Under Ninth Circuit caselaw, this number qualifies as "significant."[43] Even accepting Plaintiff's argument that the 10,000 small-parts assembler jobs and

---

[39] 20 C.F.R. § 404.1560(c)(1).

[40] *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528 (9th Cir. 2014).

[41] *Id.* at 529.

[42] *See* AR 59.

[43] *See Gutierrez*, 740 F.3d at 529.

DISPOSITIVE ORDER - 17

10,000 production assembler jobs are individually not significant, the ALJ also found 25,000 national routing clerk jobs, a significant number.[44] Therefore, Plaintiff's challenge to the significance of the ALJ's job numbers fails.

### 3. Language skills required for step-five jobs

Finally, Plaintiff argues he is illiterate relative to the English language, and the record contains no support for finding that he has the language skills needed to perform the jobs identified by the ALJ at step five according to the Dictionary of Occupational Titles (DOT) definitions of those jobs. The Commissioner responds that the ALJ adequately considered Plaintiff's language skills by assessing his marginal education without considering his ability to communicate in English.

The definitions of "Assembler, Small Products I" and "Assembler, Production" in the DOT require "Level 1" language skills, meaning the ability to "[r]ecognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and

---

[44] AR 59; *Gutierrez,* 740 F.3d at 529.

DISPOSITIVE ORDER - 18

differences between words and between series of numbers."[45] The definition of "Routing Clerk" requires "Level 2" language skills, meaning "[p]assive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes."[46] Neither level 1 nor level 2 language skills refer to the English language, whereas level 3 language skills require the ability to speak (but not to read or write) in English.[47]

---

[45] 706.684-022 Assembler, Small Products I, DICOT 706.684-022; 706.687-010 Assembler, Production, DICOT 706.687-010.

[46] 222.687-022 Routing Clerk, DICOT 222.687-022. Plaintiff erroneously argues that the DOT requires Level 1 language skills for a routing clerk. *See* ECF No. 10 at 10–11; *but see* ECF No. 10 at 15 (exhibit accurately showing "L2" language skills).

[47] DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702.

DISPOSITIVE ORDER - 19

Here, substantial evidence supports the ALJ's finding that Plaintiff possessed up to level 2 language skills for purposes of performing the step-five jobs. Plaintiff's ninth-grade education in Mexico alone is substantial evidence, considering language levels 1 and 2 do not require English language skills.[48] But the record also contains substantial evidence of levels 1 and 2 English language skills, as Plaintiff completed handwritten function and work history reports with narrative responses in English (with no indication that someone else completed the forms on his behalf),[49] spoke English and did not request Spanish language interpreters at some medical appointments,[50] and agreed to hear the beginning of the hearing without an interpreter.[51]

---

[48] *See supra* nn.45–47.

[49] AR 376–83, 390–91.

[50] *See, e.g.*, AR 38, 479, 494, 497, 512, 602, 632, 638.

[51] AR 107–14. *But see* AR 107–08, 115 (requiring a Spanish language interpreter to testify at the hearing), 367–69 (disability report indicating Plaintiff cannot speak, read, or understand English), 1243

DISPOSITIVE ORDER - 20

## IV.    Conclusion

Plaintiff fails to establish that the ALJ consequentially erred, and substantial evidence supports the ALJ's nondisability determination for the period after April 30, 2022.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's partially favorable decision is **AFFIRMED**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 10 and 12**, enter **JUDGMENT** in favor of the **Commissioner**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 14th day of July 2026.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge

---

(requiring a Spanish language interpreter for a psychological evaluation).

DISPOSITIVE ORDER - 21